# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **MAURICE L. WHYTE,** | : | |
| **Plaintiff** | : | |
| | : | **No. 1:21-cv-00124** |
| **v.** | : | |
| | : | **(Judge Kane)** |
| **C.O. ROCKEY, <u>et al.</u>,** | : | |
| **Defendants** | : | |

## <u>MEMORANDUM</u>

This matter is before the Court pursuant to Defendants' motion to dismiss (Doc. No. 36) <u>pro se</u> Plaintiff Maurice L. Whyte ("Plaintiff")'s amended complaint (Doc. No. 23). Plaintiff has filed neither a response nor a motion seeking an extension of time to do so. Accordingly, Defendants' motion to dismiss is ripe for disposition. Plaintiff has filed a letter (Doc. No. 38), which the Court construes as a motion to appoint counsel.

## I.    BACKGROUND

Plaintiff is currently incarcerated at the Columbia County Prison in Bloomsburg, Pennsylvania but initiated the above-captioned action by filing a complaint pursuant to 42 U.S.C. § 1983 while she[1] was incarcerated at the Centre County Correctional Facility in Bellefonte, Pennsylvania ("CCCF"). The matter is proceeding on Plaintiff's amended complaint against Defendants C.O. Rockey ("Rockey"), C.O. Folk ("Folk"), Jeffery Hite ("Hite"), Glenn Irwin ("Irwin"), C.O. Murphy ("Murphy"), Lieutenant Woods ("Woods"), and Lieutenant Millinder ("Millinder"). (Doc. No. 23.)

In her amended complaint, Plaintiff avers that upon intake at CCCF, she "was asked a series of medical questions and questions pertaining to [her] gender identity and sexual

---

[1] In accordance with Plaintiff's wish to be referred to using female pronouns, the Court will do so in this Memorandum .

orientation." (Doc. No. 23 at 2.) Plaintiff identifies as a transgender female. (Id.) She claims that because of her identity, the administration has subjected her to "offensive and discriminatory situations," such as using her gender "identity as the only basis to house [her] in an alternative housing unit, and involuntarily restricting [her] from being celled with any other inmate." (Id.) Plaintiff maintains that these restrictions prohibited her from participating in work assignments or other programs available to general population detainees. (Id.) Plaintiff avers that she was housed with inmates who have a history of conflict, are mentally unstable, or who have been charged with crimes of a sexual nature. (Id. at 2-3.) Plaintiff argues that Defendants Irwin and Woods noted that she was assigned to alternative housing to "keep [her] safe." (Id. at 3.) She further asserts that Defendants Wood, Irwin, and Hite retaliated against her by placing her in restrictive housing based solely upon her gender identity. (Id.)

Plaintiff asserts that on November 24, 2020, Defendant Folk "openly referred to [her] as a 'he-she,' while negatively conversing with another inmate in direct earshot of [P]laintiff." (Id.) Plaintiff claims that on December 25, 2020, Defendant Rockey, who was supervising her housing unit, "made inappropriate comments regarding [her] physical stature and the fact that [she has] augmented breasts." (Id. at 6.) Plaintiff told Defendant Rockey that she intended to inform supervisory officials of his inappropriate conduct. (Id.) Defendant Rockey then retaliated and conducted a search of Plaintiff's cell. (Id.) He confiscated "nothing but a handwritten list of novels [Plaintiff] intended to order labeled 'Black Gay Fiction.'" (Id.) Plaintiff also saw Defendant Rockey "reading mail and looking at pictures of [her]." (Id.) On January 3, 2021, the shift commander informed Plaintiff that her Prison Rape Elimination Act ("PREA") complaint against Defendant Rockey was unsubstantiated. (Id. at 7.)

Plaintiff further alleges that on January 24, 2021, Defendant Rockey was assigned to her housing unit. (Id. at 8.) Plaintiff was assaulted by another inmate, Derrick Bilger, and alleges that Defendant Rockey did not attempt to stop the assault. (Id.) Plaintiff avers that Defendant Rockey intervened only when Plaintiff "began exercising her right to use self-defense." (Id.) After the incident, Defendant Murphy escorted Plaintiff to her cell and ordered her to strip. (Id. at 9.) Plaintiff refused, arguing that a strip search in full view of other inmates and prison staff violated her privacy rights. (Id.) Defendant Murphy requested a lieutenant, and Defendant Millinder arrived at Plaintiff's cell and directed her to strip. (Id.) Plaintiff again refused, and Defendant Millinder aimed his Taser at her, threatening to subject her to disciplinary action if she did not comply. (Id.) Plaintiff "completed the strip-search for fear that she would be shot with the Taser." (Id.)

Plaintiff alleges further that since arriving at CCCF, she was on a "medically prescribed allergy diet." (Id. at 10.) Plaintiff avers that after she complained about receiving meals containing contents that she is allergic to, "mistakes regarding her meals became more frequent." (Id.) Specifically, Plaintiff claims that she received meals that did not contain "items given to the general population inmates that kitchen staff claim contained ingredients related to [her] dietary restrictions but were not substituted with anything else." (Id.) Plaintiff also claims she receives meals that "actually contained those medically restricted ingredients." (Id.) On January 26, 2021, Plaintiff began receiving "finger food" and was told by Defendant Woods that she was placed on "finger food" as a disciplinary action for "attempting to consult with supervisors regarding a meal they served [her] that day containing medically restricted ingredients." (Id. at 11.)

Finally, Plaintiff avers further that while at CCCF, she did not receive mail "that she constantly confirmed was sent by family, friends or business associates." (Id.) She avers that she "has lost property, revenue, and clientele" because of this interference with her mail. (Id.) Based on the foregoing, Plaintiff asserts violations of her First, Fourth, Eighth, and Fourteenth Amendment rights. (Id. at 12-14.) She seeks injunctive relief as well as damages. (Id.)

## II.    LEGAL STANDARDS

### A.    Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6)

Federal notice and pleading rules require the complaint to provide the defendant notice of the claim and the grounds upon which it rests. See Phillips v. Cty. of Allegheny, 515 F.3d 224, 232 (3d Cir. 2008). The plaintiff must present facts that, accepted as true, demonstrate a plausible right to relief. See Fed. R. Civ. P. 8(a). Although Federal Rule of Civil Procedure 8(a)(2) requires "only a short and plain statement of the claim showing that the pleader is entitled to relief," a complaint may nevertheless be dismissed under Federal Rule of Civil Procedure 12(b)(6) for its "failure to state a claim upon which relief can be granted." See Fed. R. Civ. P. 12(b)(6).

When ruling on a motion to dismiss under Rule 12(b)(6), the court accepts as true all factual allegations in the complaint and all reasonable inferences that can be drawn from them, viewed in the light most favorable to the plaintiff. See Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009); In re Ins. Brokerage Antitrust Litig., 618 F.3d 300, 314 (3d Cir. 2010). To prevent dismissal, all civil complaints must set out "sufficient factual matter" to show that their claims are facially plausible. See Iqbal, 556 U.S. at 678; Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009). The plausibility standard requires more than a mere possibility that the defendant is liable for the alleged misconduct: "[W]here the well-pleaded facts do not permit the

court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" See Iqbal, 556 U.S. at 679 (citing Fed. R. Civ. P. 8(a)(2)).

Accordingly, the United States Court of Appeals for the Third Circuit has identified the following steps that a district court must take when reviewing a 12(b)(6) motion: (1) identify the elements that a plaintiff must plead to state a claim; (2) identify any conclusory allegations contained in the complaint that are "not entitled" to the assumption of truth; and (3) determine whether any "well-pleaded factual allegations" contained in the complaint "plausibly give rise to an entitlement to relief." See Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010) (internal citations and quotation marks omitted). The Third Circuit has specified that in ruling on a Rule 12(b)(6) motion to dismiss for failure to state a claim, "a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." See Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010) (citing Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993)).

In the context of pro se prisoner litigation, the court must be mindful that a document filed pro se is "to be liberally construed." See Estelle v. Gamble, 429 U.S. 97, 106 (1976). A pro se complaint, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers" and can be dismissed for failure to state a claim only if it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim that would entitle her to relief. See Haines v. Kerner, 404 U.S. 519, 520-21 (1972).

**B.    Section 1983 Standard**

Section 1983 is the vehicle by which private citizens may seek redress for violations of federal constitutional rights committed by state officials.  See 42 U.S.C. § 1983.  The statute states, in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

Id.  "Section 1983 is not a source of substantive rights," but is merely a means through which "to vindicate violations of federal law committed by state actors."  See Pappas v. City of Lebanon, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004) (quoting Gonzaga Univ. v. Doe, 536 U.S. 273, 284-85 (2002)).  To state a cause of action under Section 1983, a plaintiff must allege that: (1) the conduct complained of was committed by persons acting under color of state law; and (2) the conduct violated a right, privilege, or immunity secured by the Constitution or laws of the United States.  See Harvey v. Plains Twp. Police Dep't, 421 F.3d 185, 189 (3d Cir. 2005) (quoting West v. Atkins, 487 U.S. 42, 48 (1988)).

**III.    DISCUSSION**

**A.    Claims for Injunctive Relief**

As noted supra, Plaintiff seeks injunctive relief from Defendants.  Plaintiff, however, is no longer incarcerated at CCCF; instead, she is now incarcerated at the Columbia County Prison in Bloomsburg, Pennsylvania.  Plaintiff's transfer from CCCF, therefore, renders her claims for injunctive relief moot.  See Miller v. Hartwell, 834 F. App'x 692, 694 (3d Cir. 2020) (citing Sutton v. Rasheed, 323 F.3d 236, 248 (3d Cir. 2003).  The Court, therefore, will grant

Defendants' motion to dismiss (Doc. No. 36) with respect to Plaintiff's claims for injunctive relief.

**B.      Claims Pursuant to the PREA**

Throughout her amended complaint, Plaintiff appears to raise claims against Defendants based upon their handling of various PREA complaints and for failing to follow certain provisions set forth in the PREA.  However, "[w]hile the PREA was intended in part to increase the accountability of prison officials and to protect the Eighth Amendment rights of Federal, State, and local prisoners, nothing in the language of the statute establishes a private right of action."  See Walsh v. N.J. Dep't of Corr., No. 17-2442, 2017 WL 3835666, at *4 (D.N.J. Aug. 31, 2017); see also Krieg v. Steele 599 F. App'x 231, 232 (5th Cir. 2015) (noting that "other courts addressing this issue have found that the PREA does not establish a private cause of action"); Frederick v. Snyder Cty. Prison, No. 3:18-cv-707, 2019 WL 1348436, at *4 (M.D. Pa. Mar. 22, 2019) (concluding same).  Thus, Plaintiff cannot "bring a private action to enforce obligations set forth in the PREA, whether through the statute itself or through [an] attempt to enforce the [CCCF] PREA policy via section 1983."  See Bowens v. Emps. Of the Dep't of Corr., No. 14-2689, 2016 WL 3269580, at *3 (E.D. Pa. June 15, 2016), aff'd, Bowens v. Wetzel, 674 F. App'x 133, 137 (3d Cir. 2017).  Moreover, to the extent Plaintiff challenges the quality of the investigation into his PREA complaints, he has no freestanding right to such an investigation. See Graw v. Fantasky, 68 F. App'x 378, 383 (3d Cir. 2003) (stating that "an allegation of a failure to investigate, without another recognizable constitutional right, is not sufficient to sustain a section 1983 claim.").  Accordingly, any claims premised upon violations of the PREA will be dismissed.

### C.      First Amendment Claims

#### 1.      Retaliation

Plaintiff alleges that Defendants Irwin, Hite, and Woods retaliated against her by placing her in an alternative housing unit based upon her expression of her identity as a transgender female.  (Doc. No. 23 at 3-4.)  Plaintiff also suggests that Defendant Rockey retaliated against her when he searched her cell after she told him "of her intention to inform his supervisors of his misconduct."  (Id. at 6.)  Plaintiff avers that Defendant Rockey read her mail, looked at pictures of her, and confiscated a "handwritten list of [n]ovels [she] intended to order."  (Id.)

To state a retaliation claim under the First Amendment, a plaintiff bears the burden of satisfying three (3) elements.  First, a plaintiff must prove that she was engaged in a constitutionally protected activity.  See Rauser v. Horn, 241 F.3d 330, 333 (3d Cir. 2001).  Second, a plaintiff must demonstrate that she "suffered some 'adverse action' at the hands of prison officials."  See id. (quoting Allah v. Seiverling, 229 F.3d 220, 225 (3d Cir. 2000)).  This requirement is satisfied by showing adverse action "sufficient 'to deter a person of ordinary firmness' from exercising his First Amendment rights."  See id. (quoting Suppon v. Dadonna, 2013 F.3d 228, 235 (3d Cir. 2000)).  Third, a prisoner must prove that "[her] constitutionally protected conduct was 'a substantial or motivating factor' in the decision to discipline [her]."  See id. at 333-34 (quoting Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 287 (1977)).

The mere fact that an adverse action occurs after either a complaint or grievance is filed is relevant, but not dispositive, for the purpose of establishing a causal link between the two events.  See Lape v. Pennsylvania, 157 F. App'x 491, 498 (3d Cir. 2005).  Only when the facts of a particular case are "unusually suggestive" of a retaliatory motive will temporal proximity, on

its own, support an inference of causation. See Krouse v. Am. Sterilizer Co., 126 F.3d 494, 503 (3d Cir. 1997). If a prisoner establishes a prima facie case of retaliation, the burden shifts to prison officials to show, by a preponderance of the evidence, that "they would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest." See Rauser, 241 F.3d at 334. "This is often referred to as the 'same decision defense.'" Watson v. Rozum, 834 F.3d 417, 422 (3d Cir. 2016). If the prison officials can make this showing, it defeats the retaliation claim. See Carter v. McGrady, 292 F.3d 152, 159 (3d Cir. 2002).

The Court concludes that Plaintiff has set forth a plausible retaliation claim against Defendants Irwin, Hite, and Woods at this time. The Court, therefore, will deny Defendants' motion to dismiss with respect to this claim. With respect to Plaintiff's claim against Defendant Rockey, however, this Court has suggested that "the threat of filing a grievance is not considered protected activity." See Dickerson v. Gordon, No. 1:13-cv-1993, 2015 WL 5785575, at *6 (M.D. Pa. Sept. 30, 2015); cf. Anderson v. Sundquist, 1 F. Supp. 2d 828, 834 (W.D. Tenn. 1998) (holding that "[a]n inmate does not enjoy a First Amendment right to attempt to intimidate prison employees by threats of lawsuits or disciplinary action."). Accordingly, Plaintiff has not alleged that she had engaged in protected activity when Defendant Rockey searched her cell. The Court, therefore, will grant Defendants' motion to dismiss with respect to Plaintiff's First Amendment retaliation claim against Defendant Rockey.

### 2. Right to Use the Mail

Plaintiff also suggests that her First Amendment right to use the mail was violated because she did not receive any mail "that she constantly confirmed was sent by family, friends or business associates." (Doc. No. 23 at 11.) Plaintiff suggests that her mail was withheld by

officials at CCCF. (Id.) "[P]risoners, by virtue of their incarceration, do not forego their First Amendment right to the use of the mails." See Nixon v. Sec'y Pa. Dep't of Corr., 501 F. App'x 176, 177 (3d Cir. 2012) (quoting Jones v. Brown, 461 F.3d 353, 358 (3d Cir. 2006)). However, "mere isolated incidents of interference without evidence of an improper motive . . . are insufficient to establish a First Amendment violation." See Smalls v. Williams, No. 21-cv-891, 2021 WL 1313392, at *3 (E.D. Pa. Apr. 8, 2021).

As an initial matter, Plaintiff has not adequately pled facts alleging how the named Defendants were personally involved in the alleged withholding of her mail. See Lawal v. McDonald, 546 F. App'x 107, 113 (3d Cir. 2014) (concluding that the plaintiff's collective use of the word "Defendants" failed to adequately plead which specific defendant engaged in the specific conduct alleged by the plaintiff); Hudson v. City of McKeesport, 244 F. App'x 519, 522 (3d Cir. 2007) (affirming the dismissal of one defendant because the complaint did not provide any basis for a claim against him). In any event, when considering the plausibility of a claim for purposes of a motion to dismiss, this Court must accept Plaintiff's factual allegations as true and draw all reasonable inferences in her favor. See Vorchheimer v. Phila. Owners Ass'n, 903 F.3d 100, 105 (3d Cir. 2018). The Court considers both Plaintiff's allegations and any exhibits attached to the amended complaint. See id. "And if [Plaintiff's] own exhibits contradict [her] allegations in the complaint, the exhibits control." Id. at 112.

Plaintiff attached the grievance she filed on December 24, 2020 regarding the mail issue to her amended complaint. (Doc. No. 23-1 at 22.) She also attached Defendant Woods' response thereto. (Id. at 23.) Defendant Woods stated:

> The contracted mail processing (Text Behind) company was contacted and reported issues with deliveries to multiple facilities within the Commonwealth of Pennsylvania. Arrangements were made with Text Behind to have all mail reprinted and resent to the facility. The facility has since received multiple

> deliveries from Text Behind.  No mail was withheld from anyone incarcerated in
> the facility.

(Id.)  Thus, Plaintiff's own exhibit contradicts her allegations, as the exhibit sets forth that no one at CCCF interfered with the delivery of her mail in any way.  Plaintiff's amended complaint, which is devoid of any allegations suggesting improper motive, fails to set forth a plausible First Amendment violation regarding mail withholding.  See Smalls, 2021 WL 1313392, at *3. Defendants' motion to dismiss will, therefore, be granted as to this claim.

### 3.    Improperly Processed Grievances

Plaintiff also appears to suggest that her constitutional rights were violated when officials at CCCF failed to properly investigate or respond to her grievances.  (Doc. No. 23 at 4-5, 6.) Inmates, however, do not have a constitutional right to a grievance procedure.  See Hemingway v. Gosa, 1:19-cv-583, 2019 WL 3857856, at *5 (M.D. Pa. Aug. 16, 2019).  Moreover, the filing of a grievance, participation in "after-the-fact" review of a grievance, or dissatisfaction with the response to an inmate's grievance do not establish the involvement of officials and administrators in any underlying constitutional deprivation.  See Pressley v. Beard, 266 F. App'x. 216, 218 (3d Cir. 2008) (finding that "[t]he District Court properly dismissed these defendants and any additional defendants who were sued based on their failure to take corrective action when grievances or investigations were referred to them"); Brooks v. Beard, 167 F. App'x. 923, 925 (3d Cir. 2006) (holding that allegations that prison officials responded inappropriately to inmate's later-filed grievances do not establish the involvement of those officials and administrators in the underlying constitutional deprivation); Ramos v. Pa. Dep't of Corr., No. 06-1444, 2006 WL 2129148, at *3 (M.D. Pa. July 27, 2006) (stating that "contentions that certain correctional officials violated an inmate's constitutional rights by failing to follow proper procedure or take corrective action following his submission of an institutional grievance

are generally without merit"). Plaintiff's claims alleging improper handling of her grievances will, therefore, be dismissed.

### D. Eighth Amendment Claims

#### 1. Verbal and Sexual Harassment

Plaintiff avers that Officers Folk and Rockey violated her Eighth Amendment rights by verbally abusing and sexually harassing her. (Doc. No. 23 at 5-6.) Recently, the "Third Circuit, joining several other circuits, . . . held that sexual abuse of prisoners by prison officials can violate the Eighth Amendment." See Bey v. New Jersey Dep't of Corr., No. 18-3693, 2018 WL 5784999, at *4-5 (D.N.J. Nov. 5, 2018) (citing Ricks v. Shover, 891 F.3d 468 (3d Cir. 2018)). However, "sexual harassment in the absence of contact or touching does not establish an Eighth Amendment violation." See McCain v. Wetzel, 2018 WL 1211507, at *3 (W.D. Pa. Mar. 8, 2018) (citing Schwenk v. Hartford, 204 F.3d 1187, 1197 (9th Cir. 2000)). "Verbal harassment, including lewd comments, sexual propositioning, and the like, is not sufficient to satisfy the objective element of an Eighth Amendment sexual harassment claim." Id. Thus, while Officers Folk and Rockey's alleged behavior is certainly inappropriate, it does not rise to the level of an Eighth Amendment violation. See Dickson v. Bounce, No. 3:17-cv-520, 2018 WL 1138390, at *4-5 (M.D. Pa. Feb. 26, 2018) (concluding the same regarding the inmate-plaintiff's claims based upon an "allegedly sexually charged comment"). Plaintiff's claims regarding verbal and sexual harassment will, therefore, be dismissed.

#### 2. Failure to Protect

In his amended complaint, Plaintiff suggests that Defendants Woods, Irwin, and Hite failed to protect her from harm by assigning her to a housing unit where she had "direct contact with inmates who are charged with crimes of sexual natures and/or prior convictions of crimes of

sexual nature, deeming them at risk of being sexually abusive towards other inmates." (Doc. No. 23 at 5.) Plaintiff also suggests that she was housed with "inmates who have mental disorders and histories of showing violence towards other inmates as a result of these disorders." (Id.) Plaintiff also avers that Defendant Rockey failed to protect her from inmate Bilger's assault. (Id. at 8-9.)

The Court cannot discern from Plaintiff's amended complaint whether she was a convicted inmate or a pretrial detainee at the time of the events described therein. Nevertheless, "it is it well established that, under the Constitution's guarantees of due process, an unsentenced inmate 'is entitled[,] at a minimum, to no less protection than a sentenced inmate is entitled to under the Eighth Amendment." See Bistrian v. Levi, 696 F.3d 352, 367 (3d Cir. 2012) (quoting Fuentes v. Wagner, 206 F.3d 335, 344 (3d Cir. 2000)), abrogated in part on other grounds by Mack v. Yost, 968 F.3d 311 (3d Cir. 2020). To state a claim for failure to protect from inmate violence, "an inmate must plead facts that show (1) he was incarcerated under conditions posing a substantial risk of harm, (2) the official was deliberately indifferent to that substantial risk to his health and safety, and (3) the officials' deliberate indifference caused him harm." See Bistrian, 696 F.3d at 367. To satisfy deliberate indifference, "the prison official-defendant must actually have known or been aware of the excessive risk to inmate safety." See Beers-Capitol v. Whetzel, 256 F.3d 120, 125 (3d Cir. 2001).

With respect to her claim regarding his housing assignment, Plaintiff has failed to allege facts suggesting that she faced a substantial risk of harm and that Defendants Irwin, Hite, and Woods actually knew of and disregarded an excessive risk to her health or safety. See id.; see also Smith v. Hayman, 489 F. App'x 544, 547-48 (3d Cir. 2012). Moreover, Plaintiff fails to allege that she suffered any actual harm from the other inmates in her housing unit. The Court,

therefore, will grant Defendants' motion to dismiss with respect to Plaintiff's failure to protect claim against Defendants Irwin, Hite, and Woods.

Plaintiff also avers that Defendant Rockey failed to protect her from the assault by inmate Bilger. (Doc. No. 23 at 8-9.) The exhibits attached to Plaintiff's complaint, however, indicate that on the date in question, Defendant Rockey had just returned to the housing unit from lunch and was dealing with a lunch tray issue with C.O. Pataky when he heard a "tray hit the ground." (Doc. No. 23-1 at 12.) Defendant Rockey saw inmate Bilger pick up his tray and throw it at Plaintiff; the tray did not hit Plaintiff. (Id.) Defendant Rockey ordered inmate Bilger "to lock-in several times, at which time he picked up the tray and threw it again." (Id.) Inmate Bilger then threw a cup at Plaintiff. (Id.) Inmate Bilger went to lock-in his cell, and Plaintiff pursued him with her tray. (Id.) Plaintiff slipped on the floor and fell, but got back up and pursued inmate Bilger into his cell, swinging and then throwing her tray at inmate Bilger. (Id.) Plaintiff then started punching inmate Bilger. (Id.) Defendant Rockey pulled Plaintiff out of the cell and closed the door. (Id.) Video evidence indicated that the incident began when Plaintiff threw inmate Bilger's cup "off the table towards the wall." (Id. at 13.) Video also indicated that inmate Bilger threw his tray several times, missing each time. (Id.) The incident "was initially at the table furthest away from the officer's desk." (Id. at 11.)

Upon consideration of Plaintiff's own exhibits, the Court agrees that Plaintiff has failed to state a plausible failure to protect claim against Defendant Rockey. The exhibits indicate that Plaintiff was the initial aggressor and that she did not face a substantial risk of harm from inmate Bilger throwing his lunch tray several times. Moreover, "prison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." See Farmer v. Brennan, 511

U.S. 825, 844 (1994). Here, Plaintiff suffered no harm from inmate Bilger's actions, and her exhibits contradict her allegations that Defendant Rockey did not respond reasonably to the incident. See Vorchheimer, 903 F.3d at 112. The Court, therefore, will grant Defendants' motion to dismiss with respect to Plaintiff's failure to protect claim against Defendant Rockey.

### 3.    Medically Prescribed Diet

Plaintiff next alleges that her Eighth Amendment rights were violated when she did not receive her medically prescribed diet on several occasions. (Doc. No. 23 at 10.) Plaintiff also asserts that her rights were violated when she was placed on finger food as a disciplinary action. (Id. at 11.) Plaintiff maintains that Defendant Woods denied her grievance about being placed on finger food. (Id.)

As an initial matter, Plaintiff's amended complaint is devoid of allegations suggesting that the named Defendants were personally involved in not providing her medically prescribed diet on several occasions and were personally involved in sanctioning her by placing her on finger food. See Atkinson v. Taylor, 316 F.3d 257, 271 (3d Cir. 2003) (noting that, to be liable under § 1983, defendants "must have personal involvement in the alleged wrongs . . . shown through allegations of personal direction or of actual knowledge and acquiescence"). Plaintiff alleges only that Defendant Woods denied her grievance about being placed on finger food. However, the filing of a grievance, participation in "after-the-fact" review of a grievance, or dissatisfaction with the response to an inmate's grievance, does not establish the involvement of officials and administrators in any underlying constitutional deprivation. See Pressley, 266 F. App'x at 218; Brooks, 167 F. App'x at 925. The Court, therefore, will grant Defendants' motion to dismiss with respect to Plaitniff's claims regarding her diet.

### E.    Fourteenth Amendment Claims

Plaintiff asserts that Defendants Irwin, Hite, and Woods violated her Fourteenth Amendment equal protection rights based upon her assignment to an alternative housing unit. (Doc. No. 23 at 3.)  She also suggests that Defendant Rockey violated her equal protection rights when he failed to protect her from inmate Bilger's assault.  (Id. at 8, 12.)

The Equal Protection Clause requires all persons "similarly situated" to be treated alike by state actors.  See City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985). Traditionally, "[i]n order to establish a prima facie case of discrimination under the Equal Protection Clause, [plaintiffs] need[] to prove that they were members of a protected class [such as race or gender] and that they received different treatment than that received by similarly-situated individuals."  See Oliveira v. Twp. of Irvington, 41 F. App'x 555, 559 (3d Cir. 2002). However, where a plaintiff alleges that he alone "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment," he may raise a "class of one" equal protection claim.  See Engquist v. Or. Dep't of Agric., 553 U.S. 591, 598 (2008).  To maintain such a claim, a plaintiff must establish that he has been irrationally singled out for disparate treatment.  See id.  "[A]t the very least, to state a claim under [a class of one theory], a plaintiff must allege that (1) the defendant treated him differently from others similarly situated, (2) the defendant did so intentionally, and (3) there was no rational basis for the difference in treatment."  Mosca v. Cole, 217 F. App'x 158, 164 (3d Cir. 2007).

Plaintiff alleges that Defendants Irwin, Hite, and Woods violated her equal protection rights by affirming the decision to have her placed in an alternative housing unit solely based upon her gender identity.  (Doc. No. 23 at 2-3.)  Defendants argue that Plaintiff has failed to state a claim because the amended complaint "fails to plead any facts showing that Irwin, Hite and

Woods personally directed or had any actual knowledge of and acquiesced in the conduct forming the basis for this claim." (Doc. No. 37 at 11.) Defendants also assert that the amended complaint does not plead any facts to support Plaintiff's claim of discrimination. (Id. at 12.) The Court disagrees. In light of Plaintiff's allegations, the Court concludes that she has set forth a plausible Fourteenth Amendment equal protection claim against Defendants Irwin, Hite, and Woods. Defendants' motion to dismiss will, therefore, be denied as to this claim.

With respect to Defendant Rockey, Plaintiff's amended complaint is devoid of facts suggesting that Defendant Rockey intentionally discriminated against her because of her gender identity by failing to protect her from inmate Bilger's alleged assault. While Plaintiff may believe she was treated unfairly, such belief is insufficient to set forth a plausible equal protection claim. The Court, therefore, will grant Defendants' motion to dismiss with respect to Plaintiff's equal protection claim against Defendant Rockey.

### F.    Strip Search Claims

Finally, Plaintiff suggests that Defendants Millinder, Murphy, and Rockey violated her Fourth and Eighth Amendment rights by subjecting her to a strip search on January 24, 2021. (Doc. No. 23 at 9.) Plaintiff suggests that she should have been allowed to "choose the gender of staff" who would search her. (Id.) Plaintiff also avers that Defendant Millinder threatened her by aiming his Taser at her, and that she complied with the strip search order because she feared being shot with the Taser. (Id.) Plaintiff also suggests that the strip search occurred "in full view of other inmates and prison staff." (Id.)

A prisoner's challenge to a strip search may be cognizable under § 1983 through the Fourth or Eighth Amendments. See Williamson v. Garman, No. 3:15-cv-1797, 2017 WL 2702539, at *4 (M.D. Pa. June 22, 2017) (citing Bell v. Wolfish, 441 U.S. 520, 558-60 (1979)).

To maintain a Fourth Amendment claim, the prisoner must allege that the strip search was unreasonable.  See Fatir v. Phelps, No. 18-933-CFC, 2019 WL 2162720, at *5 (D. Del. May 17, 2019).  If the inmate alleges that the strip search was conducted in a physically abusive manner, the Eighth Amendment applies.  See Jordan v. Cicchi, 428 F. App'x 195, 199-200 (3d Cir. 2011) (explaining that an excessive force claim arising from a strip search may proceed under either the Fourth Amendment or the Eighth Amendment, but the latter is "the primary source of protection after an individual's conviction").  Moreover, "[t]he strip search of a pretrial detainee may form the basis of a § 1983 claim through the Fourth or Fourteenth Amendments."  See Taylor v. Pennsylvania, No. 17-3369, 2018 WL 6574187, at *14 (E.D. Pa. Dec. 12, 2018).  As noted supra, Plaintiff's status is unclear from her amended complaint.

As an initial matter, Plaintiff asserts that the strip search occurred in "full view of other inmates and prison staff."  (Doc. No. 23 at 9.)  This Court has noted that, "[a]lthough limited in the prison context, a person has a basic right of privacy in h[er] naked body, not just in not having it viewed by the opposite sex, although the interest is stronger in the latter circumstances."  See Solan v. Ranck, No. 1:06-cv-49, 2007 WL 4111424, at *9 (M.D. Pa. Nov. 16, 2007).  "Shielding one's unclothed figure from the view of strangers . . . is impelled by elementary self-respect and personal dignity."  Michenfelder v. Sumner, 860 F.2d 328, 333 (9th Cir. 1988).  The Court, therefore, concludes that Plaintiff has set forth a plausible Fourth Amendment claim against Defendants Millinder, Murphy, and Rockey concerning the fact that the strip search allegedly occurred in full view of other inmates and staff.  The Court, therefore, will deny the motion to dismiss with respect to this aspect of Plaintiff's strip search claim.

Plaintiff also alleges that Defendant Millinder aimed his Taser at her and threatened to use it if she did not comply with the strip search order.  (Doc. No. 23 at 9.)  To the extent Plaintiff

suggests that this constituted the use of excessive force during the strip search, her claim fails. See Brown v. Wayne Cty. Pa., No. 3:18-cv-155, 2020 WL 1910138, at *13 (M.D. Pa. Jan. 30, 2020) (concluding that a threat to use a Taser on the inmate-plaintiff was insufficient to allege that the strip search was done in an unreasonable manner), report and recommendation adopted, 2020 WL 859337 (M.D. Pa. Feb. 21, 2020). The Court, therefore, will grant the motion to dismiss with respect to this aspect of Plaintiff's strip search claims.

Defendants maintain that Plaintiff's strip search claims are subject to dismissal because the courts "have not clearly established that a transgender inmate has a constitutional right to have a strip search performed by an officer of the gender with which the inmate identifies." (Doc. No. 37 at 29, 31.) They also assert they are entitled to qualified immunity because they "did not violate any clearly established statutory or constitutional rights of which a reasonable person would have known." (Id. at 29, 31.)

"Qualified immunity shields federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." Ashcroft v. al-Kidd, 563 U.S. 731, 735 (2011) (citing Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). In order to determine whether a right was clearly established, the Court must ask "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." See Schmidt v. Creedon, 639 F.3d 587, 598 (3d Cir. 2011). "If it would not have been clear to a reasonable officer what the law required under the facts alleged, then he is entitled to qualified immunity." Id. Stated differently, for a right to be clearly established, "existing precedent must have placed the statutory or constitutional question beyond debate." See al-Kidd, 563 U.S. at 741. As the Supreme Court recently noted, "[t]his demanding standard protects 'all but the

plainly incompetent or those who knowingly violate the law.'" See District of Columbia v. Wesby, 138 S. Ct. 577, 589 (2018) (quoting Malley v. Briggs, 475 U.S. 335, 341 (1986)). Accordingly, "there must be sufficient precedent at the time of action, factually similar to the plaintiff's allegations, to put [the] defendant on notice that his or her conduct is constitutionally prohibited." See Mammaro v. N.J. Div. of Child Prot. & Permanency, 814 F.3d 164, 169 (3d Cir. 2016) (quoting McLaughlin v. Watson, 271 F.3d 566, 572 (3d Cir. 2001)).

The United States Supreme Court's decision in White v. Pauly, 137 S. Ct. 548 (2017), clarifies the Court's inquiry in this regard. In that case, the Supreme Court reaffirmed that its case law "do[es] not require a case directly on point" for a right to be clearly established, but "existing precedent must have placed the statutory or constitutional question beyond debate."[2] See id. at 551 (internal quotation marks omitted) (quoting Mullenix v. Luna, 136 S. Ct. 305, 308 (2015)). The Supreme Court reiterated that the clearly-established law "must be 'particularized' to the facts of the case," and cautioned that the fact that a case presents a unique set of facts and circumstances is an "important indication" that a defendant's conduct at issue did not violate a "clearly established" right. See id. at 552 (quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987)).

In support of their argument that they are entitled to qualified immunity, Defendants cite Naisha v. Metzger, 490 F. Supp. 3d 796 (D. Del. 2020). In Naisha, the transgender inmate-plaintiff alleged that her rights were violated when she was not strip searched by an "officer of the gender with which [she] identifies." See id. at 804. The court determined that the defendants were entitled to qualified immunity because "[a] nationwide review of caselaw shows that no

---

[2] There may be the rare "obvious case," however, where "a body of case law" is not necessary. See Brosseau v. Haugen, 543 U.S. 194, 199 (2004).

court, prior to February 7, 2018, or since, has found that there is a constitutional right for a transgender inmate to have a strip search performed by an officer of the gender with which the inmate identifies." See id. at 804-05 (citing Carter-el v. Boyer, No. 1:19-cv-243, 2020 WL 939289, at *4 (E.D. Va. Feb. 25, 2020)); see also Nation v. White, No. 5:20-cv-P104-BJB, 2021 WL 768132, at *4 (W.D. Ky. Feb. 26, 2021). The Court's review of case law leads to the conclusion that no court since has determined that a transgender inmate has such a constitutional right. Thus, there is no "sufficient precedent" that would have put Defendants "on notice" that their alleged actions were "constitutionally prohibited." See Mammaro, 814 F.3d at 169. Defendants, therefore, are entitled to qualified immunity for Plaintiff's claim that her rights were violated when she was strip searched by officers of the opposite gender from which she identifies. Accordingly, the Court will grant their motion to dismiss with respect to this aspect of Plaintiff's strip search claims.

### G. Leave to Amend

Due to the applicable liberal pleading standard, a plaintiff should generally be granted leave to amend before a Court dismisses a claim that is merely deficient. See Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002). The Federal Rules of Civil Procedure allow for amendments to be granted liberally in light of the "principle that the purpose of pleading is to facilitate a proper decision on the merits." See Foman v. Davis, 371 U.S. 178, 182 (1962). The Court may deny a motion to amend where there is "undue delay, bad faith[,] or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of the amendment." See id. The Court must also determine whether a proposed amendment would be futile if the complaint, as amended, would not survive a motion

to dismiss for failure to state a claim upon which relief may be granted.  See In re NAHC, Inc. Sec. Litig., 306 F.3d 1314, 1332 (3d Cir. 2002).  Based on the foregoing, the Court concludes that it would be futile to permit Plaintiff leave to file a second amended complaint with respect to her claims that are subject to dismissal.  Plaintiff has "already had two chances to tell h[er] story."  See Jones v. Unknown D.O.C. Bus Driver & Transp. Crew, 944 F.3d 478, 483 (3d Cir. 2019).  Accordingly, "giving [her] further leave to amend would be futile."  See id.  The above-captioned action, therefore, will proceed on the following claims for damages: (1) Plaintiff's First Amendment retaliation claim against Defendants Irwin, Hite, and Woods; (2) Plaintiff's Fourteenth Amendment equal protection claim against Defendants Irwin, Hite, and Woods; and (3) Plaintiff's Fourth Amendment claim against Defendants Millinder, Murphy, and Rockey alleging that the strip search occurred in full view of other inmates and staff members.

### H.    Plaintiff's Motion to Appoint Counsel

As noted supra, Plaintiff has filed a letter in which she again requests appointment of counsel in this matter.  (Doc. No. 38.)  Plaintiff avers that she has limited access to the law library at Columbia County Prison and that she cannot meet filing deadlines "on top of preparing briefs, motions, and/or doing the appropriate research under these circumstances."  (Id. at 1.)

Although prisoners have no constitutional or statutory right to the appointment of counsel in civil cases, district courts have broad discretionary power to appoint counsel for indigent civil litigants under 28 U.S.C. § 1915(e)(1).  See Montgomery v. Pinchak, 294 F.3d 492, 498 (3d Cir. 2002).  In Tabron v. Grace, the Third Circuit developed a non-exhaustive list of factors to aid district courts in determining whether to appoint counsel for such litigants.  See Tabron v. Grace, 6 F.3d 147, 155-57 (3d Cir. 1993).  Such factors include: the plaintiff's ability to present his case; the complexity of the legal and discovery issues in the case; the amount of factual

investigation that will be required; the necessity of expert witnesses; and whether "witness credibility is a key issue." See id. Additionally, "[a]s a threshold matter, a district court must assess whether the claimant's case has some arguable merit in fact and law." See Montgomery, 294 F.3d at 498-99 (citing Tabron, 6 F.3d at 155). Finally, "[t]he plaintiff's ability to present a case is '[p]erhaps the most significant' consideration and depends on factors such as 'the plaintiff's education, literacy, prior work experience, and prior litigation experience . . . along with a plaintiff's ability to understand English . . . [and] the restraints placed upon a prisoner plaintiff by confinement.'" See Nuñez v. Wetz, No. 14-cv-0727, 2017 WL 4698092, at *1 (M.D. Pa. Oct. 19, 2017) (quoting Montgomery, 294 F.3d at 501).

The Court concludes that the Tabron factors warrant appointing counsel at this time. By partially denying Defendants' motion to dismiss, the Court has determined that Plaintiff's case "has some arguable merit in fact and law." See Montgomery, 293 F.3d at 498-99 (citing Tabron, 6 F.3d at 155). Moreover, given the unique circumstances of this matter, as well as the evolving nature of the law pertaining to transgendered inmates, the Court recognizes that Plaintiff would benefit from the assistance of counsel. Furthermore, while Plaintiff has ably proceeded pro se until this point, the Court recognizes that her current confinement at the Columbia County Prison places significant restraints on his ability to litigate her remaining claims, particularly in light of her limited law library access. The Court, therefore, will conditionally grant Plaintiff's motion to appoint counsel. Plaintiff is cautioned, however, that if the Court is unable to locate counsel to represent her, she will be required to continue participating in the above-captioned action as a pro se litigant. Because the Court is conditionally granting Plaintiff's motion to appoint counsel, the Court will stay all filing obligations and other deadlines for forty-five (45) days while the Chair of the Federal Bar Association's Pro Bono Committee attempts to find counsel to represent

Plaintiff.  Should the Court be unable to locate counsel to represent Plaintiff, the Court will then direct Defendants to file their answer to Plaintiff's amended complaint.

## IV.     CONCLUSION

For the foregoing reasons, the Court will grant in part and deny in part Defendants' motion to dismiss.  (Doc. No. 36.)  The Court will deny the motion as to the following claims for damages: (1) Plaintiff's First Amendment retaliation claim against Defendants Hite, Woods, and Irwin; (2) Plaintiff's Fourteenth Amendment equal protection claim against Defendants Hite, Woods, and Irwin; and (3) Plaintiff's Fourth Amendment claim against Defendants Millinder, Murphy, and Rockey alleging that the strip search occurred in full view of other inmates and staff members.  The Court will grant the motion as to all other claims, including Plaintiff's claims for injunctive relief.  Plaintiff's letter (Doc. No. 38), construed as a motion to appoint counsel, will be conditionally granted.  An appropriate Order follows.